IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| ELECTRIC ENERGY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 10-2629-STA-tmp |
| ) | |
| JACK LAMBERT, ) | |
| ) | |
| Defendant. ) | |

_____

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
_____

Before the Court is Plaintiff Electric Energy, Inc.'s ("EEI") Motion for Summary Judgment (D.E. # 23) filed on October 6, 2010. Defendant Jack Lambert ("Lambert") has responded in opposition. For the reasons set forth below, the Motion is **GRANTED**.

BACKGROUND

The following facts are not in dispute for purposes of this Motion unless otherwise noted.[1] At all times relevant herein, Lambert was a "Covered Person" under the Group Insurance

---

[1] Defendant has filed a response brief. However, the Court finds that Defendant's response does not comply with Local Rule of Court 7.2(d)(3):

> In addition to citing appropriate legal authorities, the opponent of a motion for summary judgment who disputes any of the material facts upon which the proponent has relied. . . shall respond to the proponent's numbered designations, using the corresponding serial numbering, both in the response and by attaching to the response the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue."

Here Defendant failed to respond to Plaintiff's statement of undisputed facts at all. As such, Defendant has not properly disputed the statements. Therefore, based on the record before the

Plan for Bargaining Unit Employees of Electric Energy, Inc. (the "Plan"), which is self-funded. (Pl.'s Statement of Undisputed Facts ¶ 1.) EEI is a fiduciary of the Plan. (*Id.* ¶ 2.)  As such, it is entitled to bring this action pursuant to 29 U.S.C. § 1132(a)(3). (*Id.*)  The Plan is covered by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). (*Id.* ¶ 3.)

Lambert was injured in a motor vehicle accident on May 31, 2005, and subsequently obtained settlement funds from third parties responsible for his injuries. (*Id.* ¶ 4.) The Plan paid $124,185.90 in medical benefits on behalf of Lambert in connection with the injuries he sustained in the automobile accident. (*Id.* ¶ 5.)  Keller, Linwood Motors Co., L & K Eickholz, Inc. entered into a settlement agreement that required payment on their behalf to Lambert in the amount of $650,000.00. (*Id.* ¶ 6.)  Former Defendant Erie Insurance Exchange ("Erie") placed $124,185.90 of the settlement proceeds in the registry of this Court, pending resolution of the dispute between EEI and Lambert. (*Id.* ¶ 7.) The Plan contains a "Reimbursement Rights and Subrogation" provision which states as follows:

> The Plan shall, to the extent of benefits paid or payable by this Plan, have a reimbursement right against any funds paid or payable by any plan, person, insurance policy, insurer or other party (collectively an "Other Party") by reason of a Covered Person's Injury or Illness, whether or not those funds are sufficient to make whole the Covered Person for the Injury or Illness. The Plan shall not be responsible for any costs or expenses, including attorneys' fees, incurred by or on behalf of a Covered Person in connection with any efforts to recover funds from any Other Party, unless this Plan agrees in writing to pay a portion of those expenses. The characterization of any funds paid or payable to or on behalf of a Covered Person, whether under a settlement agreement or otherwise, shall not affect this Plan's reimbursement right and to receive, pursuant to such right, all or a portion of such funds.
>
> The Plan Administrator, in its sole discretion, may obtain full satisfaction of the Plan's

---

Court, the Court finds that Plaintiff's statement of facts are undisputed.

reimbursement right in any manner the Plan Administrator deems appropriate. Further, the Plan Administrator may apportion liability for satisfaction of the Plan's reimbursement right among the Covered Person and any other person who receives funds by reason of the Covered Person's Injury or Illness, such as the Covered Person's parent, guardian or legal counsel.

This Plan shall also, to the extent of benefits paid or payable under this Plan, be subrogated to any claim a Covered Person may have against any Other Party for the Injury or Illness which occasioned the payment of benefits under this Plan. Upon written notification to the Covered Person, the Plan Administrator may (but shall not be required to) collect the claim directly from the Other Party in any manner the Plan Administrator chooses without the Covered Person's consent or, if applicable, the consent of his or her parent, guardian or legal counsel. The Plan Administrator shall apply any funds collected from the Other Party to payments made or to be made under this Plan and to any reasonable costs and expenses (including attorneys' fees) incurred by the Plan in connection with the collection of the claim, up to the amount of the award, settlement or other form of recovery. Any balance remaining shall be paid to or on behalf of the Covered Person as soon as administratively practical.

**Implementation**

The Plan Administrator shall determine how to pursue the Plan's reimbursement and subrogation rights and remedies. The Plan Administrator may also agree to accept less than full reimbursement if (i) the Plan Administrator has made, or caused to be made, such reasonable, diligent and systematic collection efforts as it determines are appropriate under the circumstances and (ii) the Plan Administrator, in its discretion, has determined that collection of the full amount is unlikely or that the expenses of collection would likely equal or exceed the amount to be recovered.

Where this Plan is entitled to reimbursement or subrogation under the provisions of this section, the Plan shall be permitted to or satisfy its reimbursement and subrogation rights by reducing benefits payable under the Plan to the Covered Person and/or, in the Plan Administrator's sole discretion, benefits payable under the Plan to any covered member of the Covered Person's family, for Covered Expenses then incurred but not yet paid, and for Covered Expenses incurred in the future.

Subrogation/Reimbursement Agreement

Except as otherwise provided herein, if a Covered Person incurs an Injury or Illness under circumstances where funds may be payable to or on behalf of the Covered Person by some Other Party, the Plan is not required to pay benefits for treatment of the Injury or Illness (notwithstanding any other provision of this Plan to the contrary), but may agree to

pay benefits for that Injury or Illness to the extent otherwise payable under the Plan. As a condition of paying such benefits, the Plan Administrator may (but is not required to) require the Covered Person or someone legally qualified and authorized to act for the Covered Person in writing, to:

▪ Consent to the Plan's right to reimbursement from any recovery and to its subrogation of any right of recovery the Covered Person has with respect to the Injury or Illness;

▪ Promise not to take any action which would prejudice the Plan's reimbursement and subrogation rights;

▪ Promise to reimburse the Plan for all such benefits payments to the extent that the Covered Person (or anyone else on the Covered Person's behalf, including an individual, trust or estate) receives or is entitled to receive funds from some Other Party, irrespective of how the payment of funds is made or characterized, and irrespective of whether the funds received or to be received are sufficient to make the Covered Person whole. This reimbursement must be made within 30 days after the Covered Person (or anyone else on the Covered Person's behalf, including an individual, trust or estate) receives the funds; and

▪ Promise to cooperate fully with the Plan in asserting its reimbursement and subrogation rights and supply the Plan with any and all information and execute any and all forms the Plan may need for this purpose.  In the event the Covered Person fails, or refuses to execute whatever assignment, form, agreement or other document that is requested by the Plan Administrator in connection with the Plan's reimbursement and subrogation rights, the Plan shall be relieved of any and all legal, equitable or contractual obligation for any otherwise Covered Expense incurred by the Covered Person and each member of the Covered Person's family who is covered by the Plan, including claims not yet incurred and claims then incurred but unpaid.

**Constructive Trust**

In the event the Plan, pursuant to these reimbursement and subrogation provisions, is entitled under such provisions to be reimbursed for benefits it has paid or that are payable for treatment of a Covered Person's Illness or Injury, and where the Covered Person or someone (including an individual, estate or trust) on behalf of the Covered Person receives or is entitled to receive funds for such Illness or Injury from some Other Party, the Plan shall have a constructive trust on such funds to the extent of the benefits paid or payable by this Plan. Such constructive trust shall be imposed upon the person or entity then in possession of such funds.

(*Id.* ¶ 8.)

EEI has requested that Lambert honor the terms of the Plan, but he has refused to do so. (*Id*. ¶ 9).

In its Motion for Summary Judgment, EEI argues that the plan is entitled to reimbursement of the full $124,185.90 paid on behalf of Lambert for his medical expenses. The plan is entitled to full reimbursement based on the written plan's provisions on reimbursement rights and subrogation. Plaintiff contends that this Court has exclusive jurisdiction over the interpretation of the plan documents pursuant to ERISA. Furthermore, Plaintiff argues that ERISA preempts any state law which is inconsistent with plan terms, including the make-whole rule and the common fund doctrine. According to Plaintiff the common fund doctrine should only apply to an ERISA benefits plan if the plan language states that the doctrine applies. The plan language at issue in this case provides that the plan is not responsible for costs such as attorneys fees incurred by a covered person like Lambert in connection with the recovery of funds from another party. The plan language further states that the plan may agree in writing to pay a portion of the fees. There is no evidence that the plan agreed to pay a portion of Lambert's attorneys fees from his lawsuit to recover for his injuries. As a result, Lambert is not entitled to deduct attorneys fees, and EEI is entitled to reimbursement for the full $124,185.90 the plan paid on Lambert's behalf. Therefore, the Court should grant Plaintiff's Motion.

In his response in opposition to EEI's Motion, Lambert argues that the Illinois common fund doctrine applies to the disputed funds, forcing the plan to "share in the cost incurred in acquiring the settlement and in attorney fees incurred." Lambert briefs the applicable Illinois case law on the common fund doctrine. Lambert further contends that under Illinois law the common fund doctrine applies in ERISA cases and that ERISA does not preempt the common fund doctrine. To hold otherwise would allow EEI to "freeload" from the efforts of Lambert's

attorneys.  Therefore, the Court should deny EEI's Motion for Summary Judgment.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[2]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[3] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[4] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[5] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[6] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

---

[2] Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms, Inc., 862 F.2d 597, 601 (6th Cir. 1988).

[3] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[4] Celotex, 477 U.S. at 324.

[5] Matsushita, 475 U.S. at 586.

[6] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

one-side that one party must prevail as a matter of law."[7]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[8] In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[9] Finally, the "judge may not make credibility determinations or weigh the evidence."[10] Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[11]

## ANALYSIS

The sole issue presented in this case is whether the Plan is entitled to full reimbursement of benefits paid on behalf of Lambert or whether the Illinois common fund doctrine should apply to deduct from the Plan's reimbursement a portion of the legal fees Lambert incurred to recover for his injuries. The Court holds that based on the plain language of the plan at issue, the Plan is entitled to full reimbursement for the cost of benefits paid on Lambert's behalf without reduction for attorneys fees Lambert incurred.

It is undisputed in this case that the plan at issue is an ERISA plan. A primary purpose of

---

[7] *Id*. at 251-52 (1989).

[8] *Celotex*, 477 U.S. at 322.

[9] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[10] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[11] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322 (1986).

ERISA is to guarantee "the integrity and primacy of written plans."[12] Thus, the plain language of an ERISA plan should be given its literal and natural meaning.[13] It is well-settled that federal common law also fills the gaps of ERISA to assist in the interpretation of ERISA plans.[14] However, federal courts may not apply common law theories to alter the express terms of written benefit plans.[15] "In the realm of pensions, federal common law has only been fashioned when it is necessary to effectuate the purposes of ERISA."[16]

Generally, the federal courts have "recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."[17] This "common-fund doctrine reflects the traditional practice in courts of equity" and "stands as a well-recognized exception to the general principle that requires every litigant to bear his own attorney's fees."[18] "The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are

---

[12] *Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir. 1997) (citations omitted).

[13] *Id*. (citations omitted); *see also Wausau Benefits v. Progressive Ins. Co.*, 270 F. Supp. 2d 980, 988 (S.D. Ohio 2003).

[14] *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557-58, 95 L.Ed.2d 39 (1987).

[15] *Isbell*, 139 F.3d at 1072 (citations omitted).

[16] *Id*. (citations and internal quotations omitted).

[17] *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 749 (1980) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939)). *See also Wal-Mart Stores, Inc. Assocs.' Health and Welfare Plan v. Wells*, 213 F.3d 398, 402 (7th Cir. 2000) ("To read the Wal-Mart plan literally would allow the plan to free ride on the efforts of the plan participant's attorney, contrary to the equitable concept of common fund.").

[18] *Van Gemert*, 444 U.S. at 478 (citations omitted).

unjustly enriched at the successful litigant's expense."[19] It is not surprising that "the majority of courts construing state laws which regulate non-ERISA insurance contracts have read the common-fund doctrine into contractual clauses giving insurers an unqualified right to reimbursement from their insureds."[20]

In the specific context of ERISA, some Circuits have applied the common fund doctrine in cases where plans contained no language at all about deductions for attorneys fees.[21] The Sixth Circuit, however, has consistently enforced ERISA plans that require full reimbursement when a beneficiary recovers sufficient damages from a third party tortfeasor and the plan does not provide for the deduction of legal costs such as attorneys fees.[22] As a result, the Sixth Circuit

---

[19] *Id*. (citations omitted).

[20] *Harris v. Harvard Pilgrim Health Care, Inc.*, 208 F.3d 274, 277-78 (1st Cir. 2000) ("Typically, these courts have read the reimbursement clauses' silence on the issue of attorney fees as an ambiguity, then based their holdings on the prevailing state-law principle that ambiguities in insurance policies must be construed in the insured's favor.") (citing *York Ins. Group of Maine v. Van Hall,* 704 A.2d 366, 368 n. 3 (Me.1997)). *But see Bishop v. Burgard*, 764 N.E.2d 24 (Ill. 2002) (holding that motion to adjudicate lien was not preempted by ERISA and Illinois common fund doctrine overrode plan language and would reduce plan's reimbursement of expenses paid for insured).

[21] *E.g. Wells*, 213 F.3d at 402; *Blackburn v. Sundstrand Corp.*, 115 F.3d 493, 496 (7th Cir. 1997) ("a plan might have a better argument if its governing documents expressly required participants to pay their own legal fees. . . and to remit the gross rather than the net proceeds from litigation."). *But see Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health and Welfare Plan v. Varco*, 338 F.3d 680, 690 (7th Cir. 2003). Although both *Wells* and *Varco* involved the same employer, Wal-Mart, Inc., the Seventh Circuit's decisions in these cases are distinguishable. The plan at issue in *Wells* was silent on the matter of attorneys' fees; whereas, the plan at issue in *Varco* was specifically amended to make attorneys' fees the responsibility of the insured. *Varco*, 338 F.3d 680, 683 (the plan "does not pay for nor is responsible for the participant's attorney's fees. Attorney's fees are to be paid solely by the participant."); *Wells*, 213 F.3d at 402 ("the 1996 amendment is inapplicable to this case.").

[22] *Isbell*, 139 F.3d at 1072. *See also Longaberger Co. v. Kolt*, 586 F.3d 459, 472 (6th Cir. 2009) ("The district court was correct to not deduct attorney fees from the amount of

9

has declined to adopt the equitable common fund doctrine into the federal common law of ERISA in these cases.[23] Indeed, the majority view among the Circuits is that an ERISA plan need not contribute to attorney fees where its plain language gives it an unqualified right to full reimbursement.[24] The Courts of Appeals have reasoned that developing federal common law to override a plan's clear and unambiguous language providing for full reimbursement would not "advance any explicit statutory purpose of ERISA."[25] On the contrary, applying federal common law to deny an employer its contractual right to full reimbursement "would frustrate, rather than effectuate, ERISA's repeatedly emphasized purpose to protect contractually defined benefits."[26] Additionally, adopting the common fund doctrine to deny an employer its right to full reimbursement pursuant to a written plan would have the effect of "discouraging employers from

---

reimbursement due to Longaberger."); *Smith v. Wal-Mart Assocs. Group Health Plan*, No. 99-6464, 2000 WL 1909387, at *3 (6th Cir. Dec. 27, 2000); *Ward v. Wal-Mart Stores, Inc.,* Nos. 98-1285, 98-1346, 1999 WL 801532 (6th Cir. Sept. 30, 1999).

[23] *Isbell*, 139 F.3d at 1072 ("we find that [the equitable common fund doctrine] would undermine the express terms of the Plan that require full reimbursement for medical benefits."). *Cf. Smith*, 2000 WL 1909387, at *4 (construing plan's reimbursement provision only to apply to "payment resulting from a judgment" and thereby limiting reimbursement to two-thirds of "payment" actually received by insured); *Ward*, 1999 WL 801532, at *4 (same).

[24] *Zurich Am. Ins. Co. v. O'Hara*, 604 F.3d 1232, 1237 (11th Cir. 2010); *Varco*, 338 F.3d at 690; *Harris*, 208 F.3d at 277; *Walker v. Wal-Mart Stores, Inc.,* 159 F.3d 938, 940 (5th Cir. 1998); *United McGill Corp. v. Stinnett,* 154 F.3d 168, 172-73 (4th Cir. 1998); *Health Cost Controls v. Isbell,* 139 F.3d 1070, 1072 (6th Cir.1997); *Bollman Hat Co. v. Root,* 112 F.3d 113, 116-17 (3d Cir.1997); *Ryan v. Fed. Express Corp.,* 78 F.3d 123, 127-28 (3d Cir. 1996).

[25] *Isbell*, 139 F.3d at 1072.

[26] *O'Hara*, 604 F.3d at 1237 (citing *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 148, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985)).

offering welfare benefit plans in the first place."[27]

Applying these rules of construction to the terms of the plan in the case at bar, the Court holds that the plan expressly provides for full reimbursement of recovered expenses without reduction for attorneys fees. The written plan reads in relevant part that the Plan itself will have a right to reimbursement "to the extent of benefits paid or payable" against "any funds paid or payable" to a covered person by any third party for the covered person's injuries. More importantly, the written plan specifies that the Plan itself "shall not be responsible for any costs or expenses, including attorneys' fees" incurred by a covered person, unless the Plan gives consent "in writing to pay a portion of those expenses." This provision clearly and unambiguously disclaims the operation of the common fund doctrine. It is undisputed in this case that Lambert never obtained the written consent of the plan to pay a portion of Lambert's legal expenses.[28] Based on these provisions, the Court holds that application of the common fund doctrine would contradict the terms of the Plan. Therefore, Lambert is not entitled to deduct his attorneys fees from the $124,185.90 in benefits the Plan paid on his behalf.

Lambert has contested this Court's jurisdiction in this case and continues to argue that the Court should apply the law of the state of Illinois. ERISA expressly authorizes EEI's cause of action at 29 U.S.C. 1132(a)(3)(B)(ii): "A civil action may be brought. . . by a participant,

---

[27] *O'Hara*, 604 F.3d at 1237 (citing *Varity Corp. v. Howe,* 516 U.S. 489, 497, 116 S.Ct. 1065, 1070, 134 L.Ed.2d 130 (1996)).

[28] The plan language permitted, but did not require, the plan administrator to enter into a reimbursement/subrogation agreement with the covered person. There is no evidence of such an agreement in the record before the Court. Therefore, the Court finds that this term does not apply.

beneficiary, or fiduciary. . . to obtain other appropriate equitable relief . . . to enforce. . . the terms of the plan.[29] The Supreme Court has construed this provision to authorize suits like the one at bar where a fiduciary seeks reimbursement for benefits paid according to the terms of an ERISA plan.[30] Furthermore, ERISA grants the district courts of the United States the exclusive jurisdiction over suits brought by plan fiduciaries pursuant to 29 U.S.C. § 1132(a)(3)(B)(ii).[31] This Court has previously ruled that venue is proper in the Western District of Tennessee because the Plan is administered within this District.[32] Based on these jurisdictional facts, the Court finds that this case arises under the laws of the United States, thereby binding this Court to apply ERISA and federal law. In his response brief, Lambert cites a decision of the Illinois Supreme Court holding that the Illinois common fund doctrine applied to reduce the reimbursement owed an ERISA plan.[33] Nevertheless, the Seventh Circuit Court of Appeals, whose decisions are binding on the district courts sitting in Illinois, has specifically held that ERISA preempts the Illinois common fund doctrine.[34] This Court agrees and finds no basis for the application of the laws of the state of Illinois to the issues presented.

Therefore, EEI's Motion for Summary Judgment is **GRANTED**. The Court will issue a

---

[29] 29 U.S.C. § 1132(a)(3)(B)(ii).

[30] *Sereboff v. Mid-Atlantic Med. Servs., Inc.*, 547 U.S. 356, 360, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006). *See also Kolt*, 586 F.3d at 465-66.

[31] 29 U.S.C. § 1132(e).

[32] *See* Order Denying Def.'s Mot. Transfer, Nov. 12, 2010, 5.

[33] *Bishop v. Burgard*, 764 N.E.2d 24 (Ill. 2002)

[34] *Varco*, 338 F.3d at 691 ("Conflict preemption, therefore, is appropriate in this case. . . .").

separate order for the disbursement of the funds held in the Court's registry.

**IT IS SO ORDERED.**

                                         **s/ S. Thomas Anderson**
                                         S. THOMAS ANDERSON
                                         UNITED STATES DISTRICT JUDGE

                                         Date: December 2, 2010.